UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

KIM CRAFT,                                    Case No. 14-CV-5061 (PJS/HB)

           Plaintiff,

v.                                                           ORDER

PANERA BREAD COMPANY; PANERA
BREAD FOUNDATION, INC.; PANERA,
INC.; PANERA LLC,

           Defendants.

---

Megan A. Spriggs and Richard A. Williams, Jr., R.A. WILLIAMS LAW FIRM, P.A., for plaintiff.

Patrick R. Martin and Stephanie J. Willing, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., for defendants.

Plaintiff Kim Craft brings employment-discrimination, defamation, and breach-of-contract claims against her former employer, defendant Panera LLC ("Panera").[1] This matter is before the Court on Panera's motion for summary judgment on all claims and Craft's motion for summary judgment on her defamation claim. For the reasons that follow, the Court grants Panera's motion, denies Craft's motion, and dismisses this case.

---

[1] Craft agreed at oral argument that Panera LLC is the proper defendant and that her claims against the other defendants may be dismissed.

## I.  BACKGROUND

Craft worked as a catering coordinator at Panera's Vadnais Heights location. Craft Dep. 26.  Craft's supervisor was Marie Johnson.  Craft Dep. 16, 35.  On March 1, 2013, Craft was washing dishes when Johnson and another employee (Travis Parker) walked through the kitchen.  Craft Dep. 43-44.  Another employee (JMarcus Binger) was also working in the kitchen.  Craft Dep. 44; Binger Decl. ¶ 2.  As she walked by Craft, Johnson said, "What did you say, Travis?  You said Kim's a whore?"  Craft Dep. 42-43. At the time that Johnson made this statement, Craft was facing the wall with her back to Johnson and Parker.  Craft Dep. 43-44.

On March 4, Craft reported Johnson's comment to Tammy Moran, the catering manager.  Craft Dep. 55, 58-59; *see also* Craft Dep. 16 (Moran was the catering manager). Moran apparently passed on the complaint to Don Obara, a human-resources manager, because later that day Obara contacted Craft.  Craft Dep. 55-56.  After Obara interviewed Craft, Obara and Deanna Gallagan (a district manager) determined that Johnson's comment warranted discipline, but not termination or transfer.  Obara Decl. ¶ 7; Gallagan Decl. ¶ 1.  Gallagan gave Johnson a final written warning.  Gallagan Decl. ¶ 4 & Ex. 4.

During his conversation with Craft, Obara gave her three options:  She could continue to work at the Panera in Vadnais Heights; she could transfer to the Panera in

Roseville; or she could quit.  Craft Dep. 97.  Craft responded that she did not want to

work with Johnson.  Craft Dep. 97.  Obara told Craft to take a few days off to think

about what she wanted to do.  Craft Dep. 61, 99.  Although Craft now contends that this

amounted to a retaliatory suspension, Craft admits that she was scheduled to work at

Vadnais Heights and could have gone in to work on her scheduled days.  Craft Dep. 99,

107.  Craft also explicitly testified that Panera did *not* suspend her.  Craft Dep. 105-06.

In addition, on March 4 (the same day that Craft complained), Tammy Moran offered to

facilitate Craft's return to work with Johnson, but Craft refused Moran's offer.  Craft

Dep. 93-95.

A few days later, Craft informed Panera that she wanted to transfer to the

Roseville location and that she wanted to start work at that location on March 18.  Craft

Dep. 102; Craft Dep. Ex. 14.  Craft began working at the Roseville location on March 20.

Gallagan Decl. ¶ 7 & Ex. C.  She resigned about four months later because she did not

like the commute, the schedule was not as convenient, and she was not doing as much

catering work.  Craft Dep. 52.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution

might affect the outcome of the suit under the governing substantive law.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  *Id.*  "The evidence of the non-movant is to be believed, and all justifiable

inferences are to be drawn in [her] favor."  *Id.* at 255.

*B.  Hostile Environment*

Craft first brings a claim of a hostile work environment under Title VII of the

1964 Civil Rights Act, 42 U.S.C. § 2000e et seq., and the Minnesota Human Rights Act

("MHRA"), Minn. Stat. § 363A.01 et seq.  To establish a hostile-environment claim, Craft

must show that the harassment was severe or pervasive enough to create an objectively

hostile or abusive work environment and affect a term, condition, or privilege of

employment.  *See Crawford v. BNSF Ry.*, 665 F.3d 978, 983 (8th Cir. 2012); *Sandoval v. Am.*

*Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 800 (8th Cir. 2009) (applying same standard to

hostile-environment claims under both Title VII and MHRA).

> Proving actionable harm is a high threshold.  To determine
> whether the harassment affected a term, condition, or
> privilege of employment, this court considers the frequency
> of the behavior, its severity, whether physical threats are
> involved, and whether the behavior interferes with
> plaintiff's performance on the job.  Simple teasing, offhand
> comments, and isolated incidents (unless extremely serious)

will not amount to discriminatory changes in the terms and
conditions of employment.

*Duncan v. Cty. of Dakota, Neb.*, 687 F.3d 955, 959 (8th Cir. 2012) (citations and quotations
omitted).

Craft's hostile-environment claim does not come close to clearing this "high
threshold." *Id.* Craft was subjected to a single, non-threatening (albeit crude) comment
on an isolated occasion. The Eighth Circuit has held that far more egregious and
pervasive conduct is insufficient as a matter of law to create an actionable hostile-
environment claim. *See, e.g., McMiller v. Metro*, 738 F.3d 185, 186-89 (8th Cir. 2013)
(three instances of unwanted physical contact, the last of which involved harasser
locking plaintiff in office, directing her to remove his ingrown hair with a tweezers,
forcibly preventing her from leaving, and kissing her on the face was insufficiently
severe or pervasive to support a hostile-environment claim). The Court therefore grants
Panera's motion for summary judgment on Craft's hostile-environment claim.

## C. Retaliation

Craft next brings claims of retaliation under Title VII and reprisal under the
MHRA. To prevail on either claim, Craft must show that Panera took adverse action
against her. *See Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007); *Bahr v. Capella
Univ.*, 788 N.W.2d 76, 81 (Minn. 2010).

-5-

Craft argues that Panera retaliated against her by (1) forcing her to transfer to a less-desirable location and (2) suspending her from work after she reported Johnson's comment. With respect to the latter claim, no reasonable jury could find that Panera suspended Craft. Craft reported Johnson's comment on March 4. She admits that she was scheduled to work on the following days (March 5, 6, and 7) and that she could have showed up and worked her shifts if she wanted. She also admits that she was *not* suspended by Panera; the only reason she did not show up for her scheduled shifts is that she no longer wanted to work with Johnson.

No later than March 8, Craft notified Panera that she wanted to transfer to Roseville and that she wanted to start work on March 18. Although she did not start work in Roseville until March 20, Craft offers no evidence from which a jury could conclude that this two-day delay was retaliatory. There is no evidence that the Roseville manager responsible for scheduling had any knowledge of Craft's complaint against Johnson. *See* Craft Dep. 106-09 (Craft has no knowledge that anyone else at Panera, other than the managers involved, knew why she left the Vadnais Heights location). Indeed, Craft herself accounted for the short delay by explaining that the Roseville manager had been out of town and had already made the schedule by the time that he heard that Craft wanted to start on March 18. Craft Dep. 143. Simply put,

Craft's characterization of these days off as a "suspension" is totally at odds with the record, including her own sworn testimony.

With respect to Craft's argument that her transfer to Roseville was retaliatory: Craft does not dispute that Panera gave her the choice between remaining at the Vadnais Heights location or transferring to Roseville.  She argues, however, that she could not remain in Vadnais Heights because it was unreasonable to expect her to continue to report to Johnson.  In essence, Craft is claiming that she was constructively discharged from the Vadnais Heights location and forced to transfer in order to keep her job.  But given that Craft's hostile-environment claim is without merit, she necessarily cannot establish constructive discharge.  *See Rester v. Stephens Media, LLC*, 739 F.3d 1127, 1132 (8th Cir. 2014).  Moreover, an employee must give her employer a reasonable opportunity to correct the problem before quitting and making a claim of constructive discharge.  *Id.*  Craft did not do so.

In short, because Craft cannot establish that she was either suspended or forced to transfer to Roseville, she cannot show that Panera took any adverse action against her.  As a result, her retaliation and reprisal claims fail.

### D. Defamation

Craft also brings a claim of defamation.[2]  To prevail on this claim, Craft must prove, among other things, that the defamatory statement was published to a third party.  *See Weinberger v. Maplewood Review*, 668 N.W.2d 667, 673 (Minn. 2003) (elements of defamation claim).  There were two other Panera employees present in the kitchen when Johnson made the allegedly defamatory statement:  JMarcus Binger and Travis Parker.  Only Binger and Parker would know whether they heard Johnson refer to Craft as a "whore."  But neither Binger nor Parker remember Johnson making that or any other objectionable statement.

Binger affirmatively attested that he did not hear Johnson say "anything inappropriate" about Craft and never heard Johnson say the word "whore."  Binger Decl. ¶¶ 3-4.  For his part, Parker never testified that he heard what Johnson said.  The most that Parker was willing to say is that he "may have" heard Johnson use the word "whore," but that he "[doesn't] recall hearing it," that "something was said" and that there was "awkward laughter."  Parker Dep. 14, 20.  When Deanna Gallagan, the

---

[2]Craft contends that she did not bring a defamation claim, but rather a claim of defamation per se.  The only distinction is that, if a statement is defamatory per se, "general damages are presumed and appellant may recover without any proof of actual harm . . . ."  *Longbehn v. Schoenrock*, 727 N.W.2d 153, 161 (Minn. Ct. App. 2007).  The plaintiff still must prove, however, that the defamatory statement was published.  *See id.* at 162 (noting that general damages for defamation per se are "limited to harm that would normally be assumed to flow from a defamatory *publication* of the nature involved" (emphasis added; citation and quotations omitted)).

CASE 0:14-cv-05061-PJS-HB   Document 61   Filed 04/11/16   Page 9 of 12

district manager, asked him about the incident just a couple of months after it

happened, Parker told her that he could not remember.  Parker Dep. 14-15.  He also

testified that he did not hear Johnson say anything derogatory about Craft, and he

repeatedly testified that he could not remember what was said.  Parker Dep. 15-16, 31.

Because Parker cannot remember whether he heard Johnson use the word "whore,"

there is no basis for a jury to find, by a preponderance of the evidence, that the

statement was published to a third party.  As a result, Craft cannot carry the burden of

proof on the element of publication.  *Rouse v. Dunkley & Bennett, P.A.*, 520 N.W.2d 406,

410-11 (Minn. 1994) (plaintiff bears the burden of proving that defamatory statement

was communicated to someone besides the plaintiff).

Craft's defamation claim against Panera fails for the additional reason that she

cannot hold Panera vicariously liable for Johnson's defamatory statement.  Under the

doctrine of respondeat superior, employers are vicariously liable for the torts of their

employees that are committed within the course and scope of employment.  *Frieler v.

Carlson Mktg. Grp.*, 751 N.W.2d 558, 583 (Minn. 2008).[3]  To be within the scope of

employment, the employee's misconduct must be foreseeable and must relate to and

connect with acts otherwise within the scope of employment.  *Id.*  Under Minnesota law,

_____

[3]All citations to *Frieler* are to Part II of Justice Gildea's opinion and dissent, which
is the opinion of the Minnesota Supreme Court on the issue of an employer's vicarious
liability for an employee's intentional tort.

-9-

"a plaintiff must present some evidence that an employee's sexual misconduct was foreseeable to survive summary judgment on a claim of respondeat superior liability for an intentional tort."  *Id.*

In her initial brief, Craft cited no evidence relating to foreseeability, but simply argued that, as a general matter, it is reasonably foreseeable to any employer that any individual in a position of authority may act inappropriately.  ECF No. 53 at 19.  But this is exactly the argument that the Minnesota Supreme Court rejected in *Frieler*, which held that, although an employer is generally liable under the MHRA for a supervisor's *sexual harassment*, the employer is not vicariously liable for a supervisor's *intentional torts* (in that case, assault and battery) unless the plaintiff offers evidence establishing foreseeability.  *Id.* at 583-84 (declining to hold that sexual misconduct in the workplace is foreseeable as a matter of law).

In her reply brief, Craft argues that Johnson's conduct was foreseeable based on evidence that some employees found Johnson's managerial style off-putting and that Johnson once told a gay male employee to wear pink princess accessories on his birthday.  Craft did not submit her affidavit about the princess accessories until she filed her reply brief, however, and she did not cite any evidence of foreseeability in her initial brief.  This argument is therefore not properly before the Court.  *See Gearin v. City*

*of Maplewood*, 780 F. Supp. 2d 843, 866 n.23 (D. Minn. 2011); *Torspo Hockey Int'l, Inc. v. Kor Hockey Ltd.*, 491 F. Supp. 2d 871, 878 (D. Minn. 2007).

Even if Craft's argument were properly before the Court, Craft's new evidence does not establish foreseeability because she has no evidence that Panera knew about any of Johnson's other alleged misconduct.[4]  Craft offers no evidence that Panera received a single complaint about Johnson before Johnson defamed her.  In her affidavit, Craft states that, "[t]o the best of [her] knowledge," a manager or supervisor was present at Panera on the day that Johnson told the gay employee to wear princess accessories.  Craft Aff. ¶ 11.  But Craft does not identify that other manager, or state that the other manager witnessed the incident, or indicate the level of authority that the manager had, or otherwise explain why the manager's knowledge should be attributed to Panera.  Because Craft has failed to offer evidence that Johnson's tortious conduct was foreseeable to Panera, she cannot establish that Panera is vicariously liable for that conduct.

### E.  Breach of Contract

Craft also brings a breach-of-contract claim, contending that Panera violated the anti-harassment policies in its employee handbook.  As Craft conceded at oral

---

[4]The Court also doubts that general dissatisfaction with a supervisor's managerial style would make it foreseeable that the supervisor would refer to an employee as a "whore."

argument, however, Craft's breach-of–contract claim is meritless because Panera's

employee handbook contains an express disclaimer stating that it does not create

contractual rights, and Craft signed an acknowledgment to the same effect.  Gallagan

Decl. Exs. 6, 7; *Ewald v. Wal-Mart Stores, Inc.,* 139 F.3d 619, 622 (8th Cir. 1998) (under

Minnesota law, "an employer's disclaimer of intent to form a contract in a handbook

will prevent it from being construed as an offer").  The Court therefore grants Panera's

motion for summary judgment on this claim.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1.    Defendants' motion for summary judgment [ECF No. 43] is GRANTED.

2.    Plaintiff's motion for partial summary judgment [ECF No. 51] is DENIED.

3.    Plaintiff's complaint [ECF No. 1-1] is DISMISSED WITH PREJUDICE

      AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  April 11, 2016                          s/Patrick J. Schiltz
                                                Patrick J. Schiltz
                                                United States District Judge